## Case No. 16,698.

### UNITED STATES v. WILLARD et al.

[1 Paine, 539.] [1]

Circuit Court, D. New York. April Term, 1826.

PLEADING — SPECIAL DEMURRER — EVIDENCE — TRANSCRIPTS FROM TREASURY ACCOUNTS — HOW EXPLAINED — ADVANCES TO MILITIA PAYMASTER.

1. If a plea which purports to answer all the breaches in the declaration is a good answer to some of them only, the objection cannot be taken advantage of on error, but on special demurrer only.

2. Transcripts of accounts in the treasury department are written documents, and their construction is matter of law.

3. Witnesses acquainted with the mode of accounting at the treasury, cannot be called to give their opinion as to the effect of particular charges. If there is any obscurity which requires explanation, the officers of the treasury should be examined.

[Cited in Robertson v. Stark, 15 N. H. 113.]

4. As where sums were charged as advanced to a paymaster of the militia, and witnesses were examined to prove that they believed, from the manner in which the charges were made, that a part of such sums were to pay the regular troops, their testimony was held inadmissible.

5. The duties and powers of a military officer of the United States are regulated by law, and for the court to determine.

6. Monies were advanced to a militia paymaster, under the acts of congress of 20th of January and 3d of March, 1813 [2 Stat. 791, 816], and charged to him in account under the words "Pay of the army." Held, that these words were evidence of the appropriation out of which the advances were made, and not that such advances were to be disbursed to regular troops, but not to the militia.

[7. Cited in Harris v. Barnett, 4 Blackf. 373, as showing that the seal of the treasury depart-

ment. attached to transcript of accounts. was received in evidence without question of its authenticity.]

In error to the district court of the United States for the Northern district of New-York.

The plaintiffs brought an action of debt in the court below, on a bond executed by Thomas P. Baldwin, Seth C. Baldwin, and John Willard, conditioned that the said Thomas P. Baldwin, who had been appointed district paymaster of the militia of the state of New-York in the service of the United States, in the county of St. Lawrence, should faithfully discharge the duties of his office, and regularly account when thereto required for all monies received by him as such paymaster, with the persons thereto authorized by the United States, and pay into their treasury such balance as, on a final settlement of his accounts, should be found due to them. Different breaches were assigned in the declaration, charging Baldwin with not having paid the troops the monies he had received for that purpose; with not having accounted; and with not having paid the balance due the plaintiffs, on a final settlement. Judgment by default was entered against Thomas P. Baldwin and Seth C. Baldwin. The defendant, Willard, pleaded ten pleas. The eighth plea averred a faithful payment of all monies received by Baldwin. The ninth plea averred a like payment, and also that Baldwin, as such paymaster, had never received more than 20,000 dollars, with which sum he had been charged, and on accounting with the officers of the treasury, he had been credited with payments to that amount. The tenth plea averred, that Baldwin had, as such paymaster, received no more than 20,000 dollars, for which he had in like manner duly accounted. Each of these pleas purported to answer all the breaches in the declaration. On the trial the plaintiffs offered in evidence a certified transcript of the account of Baldwin, audited at the treasury, in which he was charged as follows: "On account of militia, 20,000 dollars." "Pay of the army, 29,732 dollars 42 cents." Both sums paid him, as district paymaster of the 5th brigade of New-York militia, by Governor Tompkins. He was credited in said account for disbursements made to said brigade, including his own pay and emoluments for services rendered the United States in 1812 and 1813, as follows: "On account of militia, 20,000 dollars: Pay of the army, 21,391 dollars 59 cents: and for subsistence, forage, clothing, and contingencies, 6,858 dollars 33 cents;" leaving him indebted to the United States this sum, 1,482 dollars 50 cents. The defence set up by Willard was, that Baldwin had received only the 20,000 dollars to pay to the militia, which he had applied to that purpose; but that the residue of the money received by him was to pay the regular troops, which, so far as it had been accounted for as paid, appeared to have been applied to pay them; and that he,

Willard, as surety, was not liable for any sums advanced to Baldwin, except such as were advanced to pay the militia. To maintain this defence he called two witnesses, Elisha Jenkins and Robert Swartwout, who testified, that they were skilled in accounts. were quarter-masters during the war, and had seen accounts made out at the treasury department in relation to the quarter-masters' department. That they had examined the account in evidence, and should understand from it that 20,000 dollars only had been advanced to Baldwin to pay the militia, and that 29,732 dollars 42 cents had been advanced to pay the regular troops, and not the militia; and that the sum of 20,000 dollars had been disbursed in payment of the militia; and that the residue of the disbursements were in payment of the regular troops, and not the militia. They also testified, that Brigadier General Brown, of the militia, commanded said 5th brigade of militia in the county of St. Lawrence, and was commanding officer of the district: That said Brown would have had the command of all the regular troops in that county, unless there had been an officer there of the regular army of equal grade; and that it would have been Baldwin's duty, if so directed by General Brown, to pay the regular troops as well as the militia; and that such regular troops would have been properly called and considered a part of the said 5th brigade. They also stated, that a regiment of regular troops were stationed in said county during the period in question. This testimony was objected to by the plaintiffs, but admitted by the court, who charged the jury that they were to determine, from the account and the testimony offered, whether any monies had been advanced and paid on account of the regular troops, and if they should be of that opinion, that Willard as surety was not liable therefor. The jury found for the plaintiffs on the seven first issues, and for the defendant on the three last. [Case unreported.] The cause came up to this court on exceptions taken by the plaintiffs to the admission of the testimony of the defendants' witnesses, and the charge of the court.

R. Tillotson, U. S. Dist. Atty.
T. A. Emmet, for defendant.

THOMPSON, Circuit Justice. This case comes up on a writ of error to the district court for the Northern district of the state of New-York. It is an action of debt upon a bond in the penalty of fifteen thousand dollars, dated the 23d of December. 1812, with a condition reciting, that Thomas P. Baldwin had been appointed district paymaster of the militia in the state of New-York in the service of the United States, in the county of St. Lawrence of said state, and that he had received forty-nine thousand seven hundred and thirty-two dollars forty-two cents of Daniel D. Tompkins, governor of said state,

for that purpose, and would as such paymaster receive more from time to time. The obligation to be void if the said Thomas should well and truly execute and faithfully discharge according to law, all instructions received by him from proper authority, his duties as paymaster aforesaid, and account, when required, for all monies received by him as paymaster aforesaid, and pay into the treasury of the United States such balance as on a final settlement should be found justly due. In the declaration upon this bond, five breaches are assigned. Judgment by default has been entered against the two Baldwins, and Willard interposed ten pleas, upon which issues were joined. And on the trial a verdict was found in favour of the plaintiffs upon the first seven issues, and in favour of the defendants upon the three last. And upon the trial, a bill of exceptions was taken, on the part of the United States, to the admission of certain testimony offered by the defendant in support of his three last pleas.

Upon the argument in this court, exceptions have been taken to the sufficiency of the three last pleas, as well as to the admission of the testimony in support of them. If the exception to the pleas is well founded and available after verdict, there is no doubt but that the objection can be taken here upon the writ of error. The whole record is before this court, and if substantially erroneous in any part, the judgment must be reversed.

I have had occasion frequently to notice, that records coming from the Northern district of this state are unnecessarily, and sometimes have appeared to me to be vexatiously, voluminous, containing, in some instances, nearly thirty pleas, which never could be necessary for any purpose of real defence, and was obviously an abuse of pleading; and I would respectfully intimate to that court the propriety of applying some corrective to such a practice. The observation is not intended to apply in its full extent to the present case, although I cannot discover the least necessity for ten pleas, in order to let in all the defence which appears to have been set up. The only objection taken to the sufficiency of the pleas, is, that they only aver that the paymaster had duly paid out and disbursed all the monies received by him, but do not allege that he had accounted for the same. The exception is not true in point of fact, so far as respects the ninth and tenth pleas, which do set out specially, an accounting with the proper officer, for all monies received by him; and the eighth plea, although it does not allege any accounting, yet it is a plea to the whole declaration, purporting to be an answer to all the breaches, some of which do not allege as a breach of the condition of the bond, an omission to account. The plea is, therefore, a good answer to some of the breaches, and if defective by reason of not extending to and meeting all the breaches, it is a defect which required a special demurrer, and cannot be taken advantage of on writ of error; and is, at all

events, amendable, should a venire de novo be awarded.

The result of the question now before this court must, therefore, depend upon the validity of the exception taken to the admission of the testimony of Jenkins and Swartwout, as appearing upon the bill of exceptions. The question before the jury was, whether Thomas P. Baldwin had duly expended and accounted for all the monies he had received as district paymaster of the militia of the state of New-York in the service of the United States, in the county of St. Lawrence of said state. It being contended by Willard, that he was security only for the faithful expenditure of monies received by the paymaster in that capacity, and to be expended for that object; and that, although he might have received money for other purposes, and failed duly to expend it, yet he, as security in this bond, was not accountable for such default. The correctness of this construction of the bond is not denied on the part of the United States. Nor is it denied on the part of the defendants, but that the paymaster has failed to account for all the monies received by him, and that a balance to a considerable amount now stands against him on the books of the treasury of the United States. But it is said this balance arises out of monies received, and to be expended for other purposes than those mentioned in the bond of the defendant, and with which the defendant, Willard, has no concern. The real points of inquiry, therefore, were, how much money Thomas P. Baldwin had received in his capacity as district paymaster, as described in the bond, and how much he had expended for the purposes therein mentioned. To show this there was introduced, on the part of the United States, certain transcripts from the records of the treasury department, duly authenticated, containing a statement of the debits and credits appearing on the treasury books against Thomas P. Baldwin: and to explain these accounts was the purpose for which the evidence was offered and received. The witnesses swore, that they had frequently seen accounts relative to the quarter-masters' department, as made out at the treasury department; that they had examined the accounts in question, and should understand from them that twenty thousand dollars had been advanced to Baldwin to pay the militia, and twenty-nine thousand seven hundred and thirty-two dollars forty-two cents, advanced for the purpose of paying the regular army, and not the militia; and that they should understand from the accounts, that Baldwin had fully expended the twenty thousand dollars in payment of the militia, and that the residue of the disbursements with which he was credited, had been made in payment of the regular troops; and also, that General Brown would have had the command of all the regular troops in the county of St. Lawrence, unless an officer of the regular army, equal in grade to a brigadier-general,

had been there; and that, under such circumstances, it would have been the duty of Baldwin, had he been so directed by General Brown, although not strictly within the line of his duty without such directions, to have paid the regular troops as well as militia in the county of St. Lawrence; and 'that such regular troops would have been properly called and considered a part of the 5th brigade; and that a battalion of riflemen of the regular army of the United States, commanded by Colonel Forsyth, was stationed during the period in question in the county of St. Lawrence.

The testimony I think was improperly admitted. It was in the first place calling upon witnesses to explain the legal effect, operation, and construction of written documents. This was the province of the court. The mode and manner of drawing money and keeping the accounts at the treasury department, is regulated by law. And it was for the court to say, with reference to such laws, what was the legal construction to be given to such accounts; and if any obscurity rested upon them that required or admitted of explanation, it should have been given by officers in the treasury department, where the accounts were kept and made out. The evidence did not relate to any professional matters, or questions of art, science, or trade; upon which the opinions of witnesses are sometimes received in evidence; nor are any facts stated upon which the opinion of the witnesses was given. And whether General Brown would have had the command of the regular troops in the county of St. Lawrence, in the absence of an army officer of equal grade, was a question of law, and for the court to decide. And whether he had authority to direct Baldwin to pay the regular troops, was also a question depending upon the laws of the country, and upon which the opinion of the witnesses was not admissible. There was no evidence that, in point of fact, General Brown ever gave any directions to Baldwin to pay the regular troops, or that he ever had expended any money in such payment, except what is to be inferred from the accounts from the treasury department. And I cannot say that such conclusion is necessarily to be drawn from those accounts, when taken with reference to the laws regulating the treasury department, and making the appropriations out of which the monies were drawn. By the act of congress of the 3d March, 1809 (4 Bior. & D. Laws, 220 [2 Stat. 535]), all warrants drawn by the secretaries of the different departments upon the treasurer, must specify the particular appropriation to which the same is to be charged. And the money paid under such warrant, must be charged to such appropriation in the books of the proper officer in the treasury department, and the officer who receives such money for disbursement, is required to render distinct accounts of the application of the money, according to the appropriation under which

the same shall have been drawn. By an act of the 12th of December, 1812 [2 Stat. 787], there was an appropriation of a million of dollars towards defraying the expenses incurred, or to be incurred, under certain laws therein mentioned, authorizing the calling out of the militia. This was therefore an appropriation on account of the militia, and all advances under it would be properly chargeable to the appropriation under that name. The bond in question was given a few days afterwards, (23d December, 1812,) and recites, that money had been advanced to Baldwin to pay the militia of the state of New-York, in the service of the United States, in 'the county of St. Lawrence. The amount advanced is left blank in the bond, but the treasury account shows it was twenty thousand dollars; and the law required it to be charged to the appropriation on account of militia, which fully explains the reason why that advance stands so charged. The other charge of advances to Baldwin is twenty-nine thousand seven hundred and thirty-two dollars forty-two cents, pay of the army. And the opinion of the witnesses was admitted to establish the fact, that this was to be expended on account of the regular army, excluding the militia. But the account per se warrants no such conclusion, as will be evident from the laws making the appropriation.

By the acts of the 20th of January, 1813, and of the 3d March of the same year (4 Bior. & D. Laws, 487, 527 [2 Stat. 791, 816]), the appropriations are to defray the expenses of the military establishment of the United States for the year 1813, including volunteers and militia in the service of the United States —and there was no separate and distinct appropriation for the expenses of the militia. All advances under this appropriation would be properly chargeable to the appropriation for the army generally, including the militia; and expenditures would be properly made under it for account of the militia. The appropriations for 1814 are in like manner for the military establishment generally. The appropriations for this year do not properly come under consideration in the present case, as the accounts apply only to expenditures in 1812 and 1813; but they serve to show, that after the first distinct appropriation for militia in 1812, there were no separate appropriations for the regular troops and the militia, but they were united under the denomination of the military establishment of the United States, the militia being particularly mentioned and included. And unless the expenses of the militia were to be paid out of these appropriations of 1813 and 1814, there was no appropriation to defray such expenses. It does not therefore follow, that because the advances were made to the paymaster under the appropriation for the army, (in which I understand the militia to be included,) that he was to expend the money on account of the regular troops; so that if the testimony was admissible, the witnesses I think have drawn

a conclusion not warranted from any thing appearing on the face of the accounts, in connexion with the laws of the United States making the appropriations. The judgment must therefore be reversed, and a venire de novo awarded, returnable in this court; and the doubt which at present seems to hang over the case may be easily explained by proper inquiry at the treasury department.